UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

99 SEP -2 PM 2:57
CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

ROBERT WATERS,

Plaintiff

v.

Case No. 99-900-Civ-J-21C

LIMP BIZKIT, a Florida general partnership; FRED DURST, individually; JOHN OTTO, individually; SAM RIVERS, individually; WESLEY BORLAND, individually; ZOMBA ENTERPRISES, INC., a New York corporation; BMG MUSIC, a New York general partnership; FLIP RECORDS, INCORPORATED, a Delaware corporation; and MOJO RECORDS, LLC., a California limited liability company

Defendants.

**COMPLAINT**

Plaintiff, Robert Waters, alleges as follows:

**JURISDICTION**

1. Counts I, II, and III of this action are brought under the federal Copyright Act of 1976, as amended, 17 USC §§ 101 et seq. This court has jurisdiction pursuant to Section 1338(a) of the Judicial Code (28 USC §1338(a)).

2. Counts IV, V and VII of this action are brought pursuant to Section 1332(a) of the Judicial Code (28 USC §1332(a)) in that the matter in controversy exceeds the sum or value of $75,000.00 and are between citizens of different states.

3. Count VIII is brought under the federal Trademark Act, as amended, 15 U.S.C. §1101 et seq., under Section 495.101 et al of the Florida Statutes and under all other state statutes governing common law trademark infringement and unfair competition.

This court has jurisdiction pursuant to Section 1338 (a) and (b) of the Judicial Code (28 U.S.C.

§1338 (a) and (b)).

4. Count VI is brought pursuant to Section 1332(a) of the Judicial Code (28 U.S.C. § 1332(a)) in that the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states and to the extent the controversy is between citizens of the same state, pursuant to Section 1367(a) of the Judicial Code (28 U.S.C. §1367(a)) in that the claims against said defendants are so related to the claims set forth in Counts IV, V, VI and VII of this action that they form part of the same case or controversy under Article III of the United States Constitution.

5. As to Counts I, II, and III, venue is conferred by Section 1400 (a) of the Judicial Code (28 U.S.C. § 1400(a)) in that defendants, or their agents, may be found in this district.

6. As to Count VIII, venue is conferred by Section 1391(b)(2) in that this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or alternatively, venue is conferred by Section 1391(b)(3) in that this is a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

7. As to Count V, venue is conferred by Section 1391(a)(1) and (c) in that this is a judicial district in which the defendant resides, or alternatively, venue is conferred by Section 1391(a)(2) in that this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

8. As to Count VI, venue is conferred by Section 1391(a)(2) in that this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or alternatively, venue is conferred by Section 1391(b)(3) in that this is a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

9. As to Counts IV and VII, venue is conferred by Section 1391(a)(2) in that this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

**THE PARTIES**

10. At all relevant times, plaintiff Robert Waters ("Waters" or "plaintiff") was and is a resident of the State of Florida, residing in Jacksonville, Florida.

11. During the relevant time period, defendant Limp Bizkit ("Limp Bizkit" or "band") was a musical group operating as a Florida general partnership and upon information and belief is still operating as a Florida general partnership.

12. Upon information and belief, during the relevant time period defendant Fred Durst ("Durst") was a resident of the State of Florida, residing in Jacksonville, Florida. Upon information and belief said defendant is now be a resident of the State of California. Notwithstanding, for purposes of venue, defendant Durst may be found in this district because he regularly conducts business in this district by performing as a member of defendant Limp Bizkit, by selling and distributing in this district the copyrighted works which are the subject of this controversy and by deriving substantial revenue therefrom as a co-owner of said copyrighted works and as a performer of same.

13. Upon information and belief, at all relevant times, defendant Sam Waters ("Waters") was and is a resident of the State of Florida, residing in Jacksonville, Florida. In the alternative, in the event defendant Waters is no longer residing in Jacksonville, Florida, for purposes of venue, defendant Waters may be found in this district because he regularly conducts business in this district by performing as a member of defendant Limp Bizkit, by selling and distributing in this

district the copyrighted works which are the subject of this controversy and by deriving substantial revenue therefrom as a co-owner of said copyrighted works and as a performer of same.

14. Upon information and belief, at all relevant times, defendant John Otto ("Otto") was and is a resident of the State of Florida, residing in Jacksonville, Florida. In the alternative, in the event defendant Otto is no longer residing in Jacksonville, Florida, for purposes of venue, defendant Otto may be found in this district because he regularly conducts business in this district by performing as a member of defendant Limp Bizkit, by selling and distributing in this district the copyrighted works which are the subject of this controversy and by deriving substantial revenue therefrom as a co-owner of said copyrighted works and as a performer of same.

15. Upon information and belief, at all relevant times, defendant Wesley Borland ("Borland") was and is a resident of the State of Florida, residing in Jacksonville, Florida. In the alternative, in the event defendant Borland is no longer residing in Jacksonville, Florida, for purposes of venue, defendant Borland may be found in this district because he regularly conducts business in this district by performing as a member of defendant Limp Bizkit, by selling and distributing in this district the copyrighted works which are the subject of this controversy and by deriving substantial revenue therefrom as a co-owner of said copyrighted works and as a performer of same.

16. Upon information and belief, at all relevant times, defendant Zomba Enterprises, Inc. ("Zomba") was and still is a corporation duly incorporated in the State of New York with a principal place of business at 137-139 West 25th St., New York, NY 10001. For purposes of venue, defendant Zomba may be found in this district because it regularly conducts business in this

district through the sale and distribution in this district of the copyrighted works which are the subject of this controversy and by deriving substantial revenue therefrom as a co-owner and administrator of said copyrighted works.

17. Upon information and belief, at all relevant times, defendant BMG Music ("BMG") was and still is a New York general partnership with a principal place of business located at 1540 Broadway, New York, NY 10036. For purposes of venue, defendant BMG may be found in this district because pursuant to a certain Mortgage of Copyrights hereinafter alleged in detail, it acquired a security interest in Zomba's ownership interest in the copyrighted works which are the subject of this controversy and may derive substantial revenue therefrom.

18. At all relevant times, defendant Mojo Records, LLC. ("Mojo") was and is a limited liability company duly organized under the laws of the State of California, having a principal place of business at 1749 14th Street, Santa Monica, CA 90404.

19. At all relevant times, defendant Flip Records Incorporated was and is a corporation duly incorporated under the laws of the State of Delaware, and registered to do business in the State of California, having a principal place of business at 8733 Sunset Blvd., Suite 205, W. Hollywood, CA 90069. For purposes of venue, corporate defendant Flip resides in this district because it conducts business in this judicial district sufficient to warrant a finding of personal jurisdiction in this district and, in the alternative, a substantial part of the events or omissions giving rise to the claim herein, occurred in this district.

## COUNT I

### FOR COPYRIGHT INFRINGEMENT AGAINST DEFENDANTS' DURST, OTTO, RIVERS, BORLAND, ZOMBA AND BMG (ORIGINAL WORK)

20. Plaintiff repeats and reiterates the allegations set forth in paragraphs "1", "5", and "10" through "17" as if fully set forth herein.

21. In 1994, plaintiff Waters along with defendants Durst, Otto and Rivers, formed defendant Limp Bizkit in Jacksonville, Florida. For all intents and purposes, said band operated as a general partnership under the laws of the State of Florida, to wit, Florida Statutes §§ 620.01 et al, by equally sharing in expenses, profits and decision-making. The band performed in and around the Jacksonville, Florida area and elsewhere for the next two years during which time it acquired a distinct following and its name Limp Bizkit acquired a secondary meaning as a common law servicemark for the band.

22. In early 1996, plaintiff Waters and defendants Otto and Rivers wrote, performed and recorded the music for two songs, "Stuck" and "Stinkfinger", respectively, (hereinafter collectively "the Works") which music was copyrightable subject matter under the laws of the United States.

23. As had been the custom with original other songs created and performed by defendant band, the music was written with the intention that defendant Durst thereafter would write words for the songs for the purpose of re-recording the songs with both the words and music and thereby creating a work of joint-authorship under the copyright laws of the United States.

24. On March 11, 1998, a Certificate of Copyright Registration was issued by the Register of Copyrights for the song "Stuck" and assigned No. PA 886-031. The Certificate alleges defendants Waters, Otto and Borland to be the purported co-authors of the music and defendant Durst to be the purported author of the words and co-author of the music. Defendants Durst, Waters, Otto and Borland are alleged to be copyright claimants along with defendant Zomba who

is alleged to be both a claimant and the administrator. The year of creation of the song is alleged to be 1996 and the date of first publication of the song is alleged to be July 1, 1997. A copy of PA 886-031 is attached as Exhibit A hereto and is incorporated by reference.

25. On March 11, 1998, a Certificate of Copyright Registration was issued by the Register of Copyrights for the song "Stinkfinger" and assigned No. PA 886-036. The Certificate alleges defendants Waters, Otto and Borland to be co-authors of the music and defendant Durst to be the author of the words and co-author of the music. Defendants Durst, Waters, Otto and Borland are alleged to be copyright claimants along with defendant Zomba who is alleged to be both a claimant and the administrator. The year of creation of the song is alleged to be 1996 and the date of first publication of the song is alleged to be July 1, 1997. A copy of PA 886-036 is attached as Exhibit B hereto and is incorporated by reference.

26. On or about October 15, 1997, defendant BMG acquired an interest in defendant Zomba's purported ownership interest in said Works as a mortgagor of copyrights as recorded in the Register of Copyright at Volume 3405, page 562. A copy of the Mortgage of Copyrights is attached as Exhibit C hereto and is incorporated by reference.

27. On or about July 1, 1997, the Works appeared on the record album "Three Dollar Bill Y'All"(Album) performed by defendant Limp Bizkit. Upon information and belief, said Album was distributed and sold worldwide and continues to be sold worldwide to this day. Upon information and belief, since that time said Album has experienced and continues to experience significant sales thereby enabling defendants Durst, Otto, Rivers, Borland, Zomba and/or BMG to obtain substantial royalty revenue as purported co-owners of the copyrights in the Works.

28. On or about July 14, 1999, plaintiff Waters filed two Copyright Registration Forms

SR, one for the song "Stuck" and one for the song "Stinkfinger", respectively. Attached as Exhibits D-1, 2, and 3 herein and respectively incorporated by reference are the receipt for the filing of the songs with the Register of Copyrights and copies of both Certificate of Registration Forms. To date final Certificates of Registration have not been issued by the Registrar of Copyrights. Plaintiff reserves his right to amend this complaint to attach such Certificates upon receipt.

29. Section 5 of Exhibits D-2 and D-3 allege that plaintiff failed to be listed as a co-owner of the Works on the respective Certificates of Copyright Registration previously registered by defendants for said Works and attached hereto as Exhibits A and B.

30. By failing to list plaintiff as a co-owner on the Certificates of Registration Nos. PA 886-031 and 886-036, defendants Durst, Otto, Rivers, Borland, Zomba and/or BMG have infringed on the copyright of plaintiff Waters and have filed a false document with the Registrar of Copyrights.

31. By reason of the foregoing, plaintiff Waters has been damaged in that plaintiff is a lawful co-owner of all right, title and interest in and to the Works since 1996 and as such is due and owing his pro rata share of all revenues derived from the exploitation of the Works ab initio.

WHEREFORE, plaintiff Waters requests damages in an amount equal to his pro rata share of all revenues due and owing him from the exploitation of the copyrighted Works, plus interest, costs and attorney fees, and such other further relief as to this court seems proper.

**COUNT II**

**FOR COPYRIGHT INFRINGEMENT AGAINST DEFENDANTS DURST, OTTO, RIVERS, BORLAND, ZOMBA AND BMG (DERIVATIVE WORK)**

32. Plaintiff repeats and realleges the allegations contained in paragraphs "1", "5", "10 through "17", "21", "22"and "24" through "28" as if fully set forth herein.

33. Section 2 of the copyright applications filed by plaintiff (Exhibits D-2 and 3) list plaintiff Waters, defendant Otto and defendant Rivers as the co-authors of the music and co-owners of the respective Works. The year of creation is listed as 1996.

34. Plaintiff is a lawful co-owner of all right, title and interest in and to the Works and a holder of the copyrights to the Works since 1996. As such, plaintiff along with defendants Otto and Rivers have the exclusive right to prepare derivative works from said Works.

35. Accordingly, in the alternative to Count I, as alleged in Section 5 of the copyright applications filed by plaintiff Waters (Exhibit D-2 and 3), the Certificates of Copyright Registration assigned No. PA 886-031 and No. PA 886-036, respectively (Exhibits A and B) allege music and lyrics which are in fact derivative works of plaintiff Waters and defendants Otto and Rivers in that they add lyrics to music which is substantially similar to plaintiff's copyrighted Works.

36. Defendants Durst, Borland, Otto and Rivers have infringed on plaintiff's copyright by creating a derivative work without his knowledge or consent and have filed a false document with the Registrar of Copyrights.

37. By reason of the foregoing, plaintiff Waters is entitled to damages in that plaintiff is a lawful co-owner of the original copyrighted Works and as such is due and owing his pro rata share of revenues derived from the exploitation of the derivative works ab initio.

WHEREFORE, plaintiff Waters requests damages in an amount equal to his pro rata share

of all revenue due and owing him from the exploitation of the derivative works, plus interest, costs and attorney fees and such other further relief as to this court seems proper.

**COUNT III**

**FOR FAILURE TO ACCOUNT AGAINST DEFENDANTS OTTO AND RIVERS AS CO-OWNERS OF THE COPYRIGHTED WORKS (DERIVATIVE WORKS)**

38. Plaintiff repeats and realleges the allegations contained in paragraphs "1", "5", "10", "13", "14", "21", "22', "24" through "28" and "33" through "35" as if fully set forth herein.

39. As an alternative to Count II, as co-owners of the copyrighted Works (Exhibits D-2 and 3), Otto and/or Rivers have a duty to account for all revenues earned as a consequence of licensing said copyrighted Works to third parties. In the event that defendants Otto and Rivers licensed the exploitation of the derivative works (Exhibits A and B) to defendants Borland, Durst, Zomba and/or BMG or to any other unknown licensees, they owe a duty to account to plaintiff for all revenues earned by doing so and to remit plaintiff's pro rata share of revenues forthwith.

40. Defendants Rivers and Otto have not accounted to plaintiff or otherwise remitted due payment for any licensing they may have granted for the exploitation of said Works.

41. By reason of the foregoing, plaintiff is entitled to an accounting of all revenues derived from the exploitation of the licensed Works. Plaintiff has no adequate remedy at law to determine the amount due and owing. In addition, upon such an accounting, plaintiff is entitled to damages in an amount equal to his pro-rata share of all such revenues.

WHEREFORE, plaintiff Waters requests an accounting of all revenues derived from the exploitation of the licensed Works and damages in an amount equal to his pro rata share of all such revenues, plus interest, costs and attorney fees and such other further relief as to this court

seems proper.

## COUNT IV

## FOR BREACH OF CONTRACT AGAINST DEFENDANT MOJO RECORDS LLC.

42. Plaintiff repeats and reiterates the allegations set forth in paragraphs "2", "9", "10", "18", "19", and "21" as if fully set forth herein.

43. On or about June 3, 1996, defendant Limp Bizkit, and its individual partners, plaintiff Waters and defendants Durst, Rivers and Otto, along with another person who is not a party to this action, executed an Exclusive Recording Agreement with defendant Mojo in Jacksonville, Florida (Mojo Agreement). A copy of the fully executed agreement is attached hereto as Exhibit E and incorporated by reference.

44. Shortly thereafter, the band left Jacksonville, Florida in order to commence recording at Mojo's studios in Los Angeles, California. En route to California, the band had an automobile accident and most of the member suffered injuries. Nonetheless, the band proceeded to California to fulfill its contractual obligations to defendant Mojo.

45. During the months of June and July, 1996, plaintiff found Mojo to be increasingly distant making it difficult for the band to perform its recording obligations. Still suffering from injuries and amid rumors that the Mojo Agreement might be purchased by a third party, plaintiff, as well as all the partners of defendant Limp Bizkit flew back to Jacksonville but at all times with the intention of returning to Los Angeles to complete his recording obligations with Mojo.

46. On or about July 19, 1996, while still recuperating in Jacksonville plaintiff received, through counsel, a purported release from defendant Mojo outlining the terms of a buy-out of the

Mojo Agreement by defendant Flip Records and requesting that plaintiff return the release to Mojo within five business days. By this agreement, plaintiff would agree to permit Mojo to accept the sum of $100,648.50 from defendant Flip as the purchase price for the band's contract with Mojo and the parties would mutually agree to release each other from all claims, demands, suits, etc. At the time plaintiff received the purported release, it already had been signed by defendant Durst. A copy of the July 19, 1996 purported release is attached as Exhibit F and incorporated by reference.

47. At no time did plaintiff sign the purported July 19, 1996 release (Exh. F). On August 6, 1996, plaintiff received a letter at his home in Jacksonville from Mojo advising him that Mojo had terminated its agreement with defendant Limp Bizkit and again was requesting that plaintiff sign a revised release and termination document. This time the release contained language to the effect that in the event any of the members of the band failed to execute the agreement, it would still be deemed complete, effective and otherwise enforceable when it was partially executed and when the termination payment was accepted by Mojo in writing. It further provided that those signatories who had signed the agreement at the time of Mojo's acceptance would agree to indemnify and save and hold Mojo harmless from any liability arising out of the agreement. A copy of the purported revised August 2, 1996 release along with the letter accompanying it and is incorporated by reference is attached as Exhibit G.

48. At no time did plaintiff Waters sign the purported revised release (Exh. G). By letter dated August 23, 1996, Mojo's attorney advised plaintiff's attorney that until such time as a formal termination and release agreement was signed by all parties, the partners in the band would be bound by the terms of the recording agreement. A copy of this letter is attached as Exhibit H.

49. Shortly thereafter, defendant Flip told plaintiff that he would no longer be recording with the band and that the band would be reconstituted with new members.

50. To this date, plaintiff has not signed any release proferred to him by defendant Mojo. Upon information and belief, defendant Mojo has accepted payment in full from defendant Flip for the buy-out of the Mojo Agreement. To this date, plaintiff has heard nothing further regarding the fulfillment of any rights or obligations to defendant Mojo since the August 23, 1996 letter.

51. The Mojo Agreement is a personal services contract. Said Agreement with the band does not provide for its assignment, sale or purchase by any third party. Accordingly, Mojo has breached its Agreement with plaintiff Waters.

52. At no time did plaintiff ever abandon the band or the partnership. Nor did plaintiff take any action whatsoever to cause the breach of contract by defendant Mojo.

53. As a direct and proximate result of defendant Mojo's breach of contract, plaintiff has suffered damages, including, but not limited to revenue he would have earned had he continued to perform with the band, including revenues from record sales, touring, and merchandising.

WHEREFORE, plaintiff requests judgment against defendant Mojo for damages in excess of $75,000, interest, costs of suit, attorney fees and such other and further relief to which plaintiff may be entitled.

**COUNT V**

**FOR TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP AGAINST DEFENDANT FLIP RECORDS INCORPORATED**

54. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "2", "7", "10", "18", "19", "21", and "43"through "52" as if fully set forth herein.

55. Upon information and belief, prior to June 3, 1996, defendant Flip, through its authorized agent, had contacted defendant Durst in Jacksonville about the possibility of signing the band to its label.

56. On a date not known to plaintiff but subsequent to June 3, 1996, Flip learned that the band had signed an Exclusive Recording Agreement with defendant Mojo.

57. On dates not known to plaintiff but shortly after the Mojo Agreement was signed, Flip contacted Mojo to induce them to breach its contract with the band by selling the contract to Flip and terminating the Mojo Agreement. Upon information and belief, Flip also contacted defendant Durst both in Los Angeles and Jacksonville to urge him to have the contract with Mojo terminated and to sign with Flip. In addition, upon information and belief, during the negotiations, Flip already had begun to arrange for new individuals to replace plaintiff as a performer with the band .

58. On a date not known to plaintiff but in and around August 23, 1996, Mojo had accepted payment in full from Flip for the purchase of the Mojo Agreement and had deemed the contract with the band terminated.

59. Subsequent to the purchase of the Mojo Agreement, Flip informed plaintiff that his services would no longer be necessary.

60. But for Fip's purchase of the Mojo Agreement, plaintiff would have been performing with the band and deriving substantial benefits therefrom.

61. With the requisite knowledge and consent, Flip induced Mojo to do the things described above for the purpose of wrongfully depriving plaintiff of his rights to continue to perform with the band and to derive the benefits of same.

62. As a direct and proximate result of defendant Flip's inducement of Mojo, plaintiff has been damaged, including, but not limited to, all revenues he would have earned had he continued to perform with the band, including revenues from record sales, touring, and merchandising.

WHEREFORE, plaintiff requests judgment against defendant Flip for damages in excess of $75,000.00, costs of this suit, and such other and further relief as to this court seems proper.

**COUNT VI**

**FOR BREACH OF PARTNERSHIP AGREEMENT AGAINST DEFENDANTS LIMP BIZKIT, DURST, OTTO AND RIVERS**

63. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "4", "8", "10" through "15", "18", "19", "21"and "42" through "62" as if fully set forth herein.

64. At all relevant times, defendant Limp Bizkit acted as a Florida general partnership duly organized under the laws of the State of Florida. Between 1994 and up until the time of the Mojo Agreement, the band had regularly played clubs, recorded songs and developed a distinct following in their hometown of Jacksonville, Florida and elsewhere, at all times using the name "Limp Bizkit". As a consequence of such use, the name "Limp Bizkit"acquired a secondary meaning and obtained the status of a common-law servicemark. Upon information and belief, the name "Limp Bizkit" has not been registered with the federal trademark office, with the Florida trademark office, or with any other state trademark office.

65. Subsequent to the purchase of the Mojo Agreement and the replacement of plaintiff as a performer in the band, the "reconstituted" band began to play, record, perform, and sell and distribute records and merchandise, still using the name "Limp Bizkit", which it continues to do worldwide until this day.

66. Under Florida, F.S. §§ 620.745, a partnership cannot simply reaggregate without a formal dissolution of the partnership and a distribution of its assets. No such formal dissolution of the Limp Bizkit partnership has ever taken place; nor has there ever been a distribution of assets, including compensation for the good will in the name Limp Bizkit.

67. In the absence of any such dissolution and distribution, plaintiff is still a partner in defendant Limp Bizkit and a co-owner of the servicemark "Limp Biskit".

68. At no time did plaintiff Waters wrongfully cause the dissolution of the partnership or otherwise abandon the partnership.

69. By reason of the foregoing, plaintiff is entitled to an accounting of his share of the partnership profits to date and upon such an accounting, remittance of same.

WHEREFORE, plaintiff demands judgment for an accounting of all profits earned by the band to date and for damages in excess of $75,000, plus costs of suit, attorney's fees and interest.

**COUNT VII**

**FOR BREACH OF FIDUCIARY DUTY AGAINST DEFENDANT DURST**

70. Plaintiff repeats and realleges each and every allegation contained in paragraphs "2", "9", "10" through "15", "18", "19", "21", "42" through "52", "55" through "61" through "68" as if fully set forth herein.

71. Upon information and belief, defendant Durst participated in Flip's inducement to buy out the Mojo Agreement. At no time did Durst discuss the proposed purchase of the Agreement with plaintiff.

72. By reason of the foregoing, defendant Durst breached his fiduciary duty to the plaintiff as a member of the defendant partnership Limp Bizkit.

73. As a direct and proximate result of defendant Durst's breach of fiduciary duty, plaintiff has been damaged, including, but not limited to, the revenues he would have received had he continued to perform with the band and to be treated as a partner in defendant Limp Bizkit.

Wherefore, plaintiff demands judgment against defendant Durst in excess of $75,000, plus interest, costs of suit, attorney's fees and such other relief as to this Court seems proper.

**COUNT VIII**

**FOR TRADEMARK INFRINGEMENT AGAINST DEFENDANT LIMP BIZKIT, DURST, RIVERS, OTTO, BORLAND AND THEIR UNKNOWN LICENSEES**

74. Plaintiff repeats and realleges each and every allegation contained in paragraphs "3", "6", "10" through "15", 21", and "64" through "66" as if fully set forth herein.

75. Since 1994 the band has used the name "Limp Bizkit" in association with its performance as a band and its style of music initially in and around Jacksonville, Florida and subsequently in interstate commerce and worldwide. The name "Limp Bizkit" is inherently distinctive and enjoys the status of a common law service mark under Section 43(a) of the federal Trademark Act ("Lanham Act"), 15 U.S.C. § 1125(a), most, if not all, state trademark acts, including Section 495.101 et al. of the Florida Statutes and under common law in general.

76. Plaintiff Waters was an original partner in defendant Limp Bizkit, was a partner at the time the band signed the Mojo Agreement and in the absence of any formal dissolution, continues to be a partner in the band to this day. As such plaintiff was one of the first persons to use the servicemark "Limp Bizkit" in association with the band and the musical services it provides and continues to be an owner of the common law servicemark to this day.

77. Subsequent to defendant Flip's purchase and sale of the Mojo Agreement, the band

was reconstituted to include defendants Durst, Otto, Rivers and Borland, but not plaintiff. Upon information and belief, these defendants to this day continue to represent themselves in interstate commerce as the only owners of the service mark "Limp Bizkit."

78.  Defendants Durst, Otto, Rivers, and Borland knowingly and willfully are using the service mark "Limp Bizkit"in commercial advertising or promotion so as to misrepresent the origin of the mark and so as to cause public confusion as to the ownership of the mark under Section 43(a)(1) of the Lanham Act.

79.  Upon information and belief, defendants named herein may have individually or jointly licensed others to use the servicemark "Limp Bizkit". Upon due discovery of such licensees, plaintiff reserves the right to amend these pleadings to name such unknown licensees as additional defendants herein.

80.  By reason of the foregoing, under Section 43 (a)(2) of the Lanham Act, plaintiff is entitled to an injunction against further use of the mark in interstate commerce. In addition, because defendants are willfully and knowingly using said mark in a manner violative of the statute, plaintiff is entitled to damages suffered as a result of said improper use, including all profits derived by defendants from the exploitation of the mark and any other damages afforded under Section 43(a)(2) of the Lanham Act, to wit, under sections 1117(a) and 1118 of Title 15, U.S.C.

81. In addition, defendants' actions also give rise to actions for infringement of common law trademark and unfair competition in the State of Florida and in each state where the servicemark is used and in which such causes of action are recognized.

82.  By reason of the foregoing, plaintiff is entitled to injunctive relief in as much as there

is not another plain, speedy or adequate remedy at law to prevent further confusion to the public, and for an accounting of all profits from the exploitation of said servicemark, and upon such accounting, remittance of damages in an amount equal to said profits.

WHEREFORE, plaintiff is entitled to judgment for injunctive relief and for damages arising out of defendants' trademark infringement, plus interest, costs of suit, attorney's fees and such other and further relief as to this court seems proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON EACH AND EVERY COUNT HEREIN.**

**WHEREFORE**, plaintiff demands judgment against defendants as follows:

A. As to Count I, for damages for copyright infringement of an original work against defendants Durst, Rivers, Otto, Borland, Zomba and BMG; or

B. In the alternative, as to Count II, damages for copyright infringement of a derivative work against defendants Durst, Rivers, Otto, Borland, Zomba and BMG, or

C. In the alternative, as to Count III, for damages for failure to account against defendants Otto and Rivers; and

D. As to Count IV, for damages for breach of contract and wrongful termination against defendant Mojo; and

E. As to Count V, damages for tortious interference with a contractual relationship against defendant Flip; and

F. As to Count VI, damages for breach of partnership agreement against defendants Limp Bizkit, Durst, Otto, Borland and Rivers; and

G. As to Count VII, damages for breach of fiduciary duty against defendant Durst; and

H. As to Count VIII, injunctive relief and damages for trademark infringement against defendants Limp Bizkit, Durst, Rivers, Otto and Borland and their unknown licensees, and

I. For costs, pre-judgment interest, and attorney's fees; and

J. For such other and further relief as to this Court seems proper.

Dated: September 2, 1999

Respectfully submitted,

Carolyn Herman, Esq.
1831 N. Third Street
Jacksonville Beach, FL 32250
(904)247-9420
Attorney for Plaintiff

For a Work of the Performing Arts
UNITED STATES COPYRIGHT OFFICE 

REGISTRATION NUMBER

PA 886-031

EFFECTIVE DATE OF REGISTRATION

MAR 11 1998

Month Day Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1** TITLE OF THIS WORK ▼
Stuck

PREVIOUS OR ALTERNATIVE TITLES ▼

NATURE OF THIS WORK ▼ See instructions
Words and Music

**2 a** NAME OF AUTHOR ▼
Fred Durst (member of the group "Limp Bizkit")

DATES OF BIRTH AND DEATH
Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ USA
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions

NATURE OF AUTHORSHIP Briefly describe nature of the material created by this author in which copyright is claimed. ▼
Words and Music

NOTE
Under the law, the "author" of a

NAME OF AUTHOR ▼
Sam Rivers (member of the group "Limp Bizkit")

DATES OF BIRTH AND DEATH
Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions

NATURE OF AUTHORSHIP Briefly describe nature of the material created by this author in which copyright is claimed. ▼
Music

NAME OF AUTHOR ▼
Wesley Borland (member of the group "Limp Bizkit")

DATES OF BIRTH AND DEATH
Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ USA
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions

NATURE OF AUTHORSHIP Briefly describe nature of the material created by this author in which copyright is claimed. ▼
Music

**3 a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED
This information must be given in all cases
1996 ◀ Year

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.
Month ▶ July Day ▶ 1 Year ▶ 1997
United States of America ◀ Nation

**4** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼
Zomba Enterprises Inc., Fred Durst, Sam Rivers, Wesley Borland, and John Otto; All administered by and c/o Zomba Enterprises Inc.,
137-139 West 25th Street, New York, NY 10001

See instructions before completing this space.

TRANSFER If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼
By written agreement

DO NOT WRITE HERE OFFICE USE ONLY
APPLICATION RECEIVED MAR 11 1998
ONE DEPOSIT RECEIVED MAR 11 1998
TWO DEPOSITS RECEIVED
REMITTANCE NUMBER AND DATE

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions. • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of 4 pages

EXHIBIT A

EXAMINED BY RG FORM PA

CHECKED BY

☐ CORRESPONDENCE Yes

FOR COPYRIGHT OFFICE USE ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**5**

PREVIOUS REGISTRATION Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No If your answer is "Yes," why is another registration being sought? (Check appropriate box)
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼ Year of Registration ▼

**6**

DERIVATIVE WORK OR COMPILATION Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.
a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

See instructions before completing this space

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**7**

DEPOSIT ACCOUNT If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼ Zomba Enterprises Inc.
Account Number ▼ DAO-35017

CORRESPONDENCE Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

Denise Levy
Zomba Enterprises Inc.
137-139 W.25th Street
New York, NY 10001

Be sure to give your daytime phone number.

Area Code & Telephone Number ▶ (212) 824-1749

**8**

CERTIFICATION* I, the undersigned, hereby certify that I am the
Check only one ▼
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of Zomba Enterprises Inc.
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Denise Levy date ▶ 3-8-98

Handwritten signature (X) ▼ Denise Levy

**9**

MAIL CERTIFICATE TO

Certificate will be mailed in window envelope

Name ▼ Denise Levy
c/o Zomba Music Publishing
Number/Street/Apartment Number ▼ 137-139 West 25th Street
City/State/ZIP ▼ New York, NY 10001

- Complete all necessary spaces
- Sign your application in space 8

1. Application form
2. Nonrefundable $20 filing fee in check or money order payable to Register of Copyrights
3. Deposit material

MAIL TO:
Register of Copyrights
Library of Congress
Washington, D.C. 20559

The Copyright Office has the authority to adjust fees at 5-year intervals, based on changes in the Consumer Price Index. The next adjustment is due in 1996. Please contact the Copyright Office after July 1995 to determine the actual fee schedule.

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

This form was electronically produced by Elite Federal Forms, Inc.

(THU) 5. 27' 99 14:24/ST. 14:11/NO. 3760526741 P 7 FROM



# CONTINUATION SHEET FOR APPLICATION FORMS

FORM ____ /CON
UNITED STATES COPYRIGHT OFFICE

PA 886-031

- This Continuation Sheet is used in conjunction with Forms CA, PA, SE, SR, TX, and VA only. Indicate which basic form you are continuing in the space in the upper right-hand corner.
- If at all possible, try to fit the information called for into the spaces provided on the basic form.
- If you do not have space enough for all the information you need to give on the basic form, use this Continuation Sheet and submit it with the basic form.
- If you submit this Continuation Sheet, clip (do not tape or staple) it to the basic form and fold the two together before submitting them.
- Part A of this sheet is intended to identify the basic application. Part B is a continuation of Space 2 on the basic application. Part C (on the reverse side of this sheet) is for the continuation of Spaces 1, 4, or 6 on the basic application.

PA PAU SE SEG SEU SR SRU TX TXU VA VAU

EFFECTIVE DATE OF REGISTRATION

MAR 11 1998

(Month) (Day) (Year)

CONTINUATION SHEET RECEIVED

MAR 11 1998

Page 3 of 4 pages

DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY

**A** Identification of Application

**IDENTIFICATION OF CONTINUATION SHEET:** This sheet is a continuation of the application for copyright registration on the basic form submitted for the following work:

- TITLE: (Give the title as given under the heading "Title of this Work" in Space 1 of the basic form.)

Stuck

- NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S): (Give the name and address of at least one copyright claimant as given in Space 4 of the basic form.)

Zomba Enterprises Inc., 137-139 West 25th Street, New York, NY 10001

**B** Continuation of Space 2

**d** NAME OF AUTHOR ▼ John Otto (member of the group "Limp Bizkit")

DATES OF BIRTH AND DEATH: Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☒ No

AUTHOR'S NATIONALITY OR DOMICILE (Name of Country): OR { Citizen of ▶ USA / Domiciled in ▶ ____ }

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? ☐ Yes ☒ No; Pseudonymous? ☐ Yes ☒ No. If the answer to either of these questions is "Yes" see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by the author in which copyright is claimed. ▼

Music

**e** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH: Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☐ No

AUTHOR'S NATIONALITY OR DOMICILE (Name of Country): OR { Citizen of ▶ ____ / Domiciled in ▶ ____ }

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? ☐ Yes ☐ No; Pseudonymous? ☐ Yes ☐ No. If the answer to either of these questions is "Yes" see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by the author in which copyright is claimed. ▼

**f** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH: Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☐ No

AUTHOR'S NATIONALITY OR DOMICILE (Name of Country): OR { Citizen of ▶ ____ / Domiciled in ▶ ____ }

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? ☐ Yes ☐ No; Pseudonymous? ☐ Yes ☐ No. If the answer to either of these questions is "Yes" see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by the author in which copyright is claimed. ▼

*Use the reverse side of this sheet if you need more space for continuation of Spaces 1, 4, or 6 of the basic form.*

This form was electronically produced by Elite Federal Forms, Inc.

EXHIBIT A

# CONTINUATION SHEET FOR APPLICATION FORMS

FORM ____ /CON
UNITED STATES COPYRIGHT OFFICE

PA 886-031

PA PAU SE SEG SEU SR SRU TX TXU VA VAU

EFFECTIVE DATE OF REGISTRATION
MAR 11 1998
(Month) (Day) (Year)

CONTINUATION SHEET RECEIVED
MAR 11 1998

Page 3 of 4 pages

- This Continuation Sheet is used in conjunction with Forms CA, PA, SE, SR, TX, and VA only. Indicate which basic form you are continuing in the space in the upper right-hand corner.
- If at all possible, try to fit the information called for into the spaces provided on the basic form.
- If you do not have space enough for all the information you need to give on the basic form, use this Continuation Sheet and submit it with the basic form.
- If you submit this Continuation Sheet, clip (do not tape or staple) it to the basic form and fold the two together before submitting them.
- Part A of this sheet is intended to identify the basic application.
  Part B is a continuation of Space 2 on the basic application.
  Part C (on the reverse side of this sheet) is for the continuation of Spaces 1, 4, or 6 on the basic application.

DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY

## A — Identification of Application

IDENTIFICATION OF CONTINUATION SHEET: This sheet is a continuation of the application for copyright registration on the basic form submitted for the following work:

- TITLE: (Give the title as given under the heading "Title of this Work" in Space 1 of the basic form.)

Stuck

- NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S): (Give the name and address of at least one copyright claimant as given in Space 4 of the basic form.)

Zomba Enterprises Inc., 137-139 West 25th Street, New York, NY 10001

## B — Continuation of Space 2

**d** NAME OF AUTHOR ▼
John Otto (member of the group "Limp Bizkit")

DATES OF BIRTH AND DEATH — Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☒ No

AUTHOR'S NATIONALITY OR DOMICILE (Name of Country): OR { Citizen of ▶ USA / Domiciled in ▶ ____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes" see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by the author in which copyright is claimed. ▼
Music

**e** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH — Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☐ No

AUTHOR'S NATIONALITY OR DOMICILE (Name of Country): OR { Citizen of ▶ ____ / Domiciled in ▶ ____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes" see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by the author in which copyright is claimed. ▼

**f** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH — Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☐ No

AUTHOR'S NATIONALITY OR DOMICILE (Name of Country): OR { Citizen of ▶ ____ / Domiciled in ▶ ____

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes" see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by the author in which copyright is claimed. ▼

*Use the reverse side of this sheet if you need more space for continuation of Spaces 1, 4, or 6 of the basic form.*

This form was electronically produced by Elite Federal Forms, Inc.

EXHIBIT A



# FORM PA

For a Work of the Performing Arts
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

PA 886-036

EFFECTIVE DATE OF REGISTRATION

MAR 11 1998
Month Day Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1**

TITLE OF THIS WORK ▼
Stinkfinger

PREVIOUS OR ALTERNATIVE TITLES ▼

NATURE OF THIS WORK ▼ See instructions
Words and Music

**2**

**a** NAME OF AUTHOR ▼
Fred Durst (member of the group "Limp Bizkit")

DATES OF BIRTH AND DEATH
Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ USA
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by this author in which copyright is claimed. ▼
Words and Music

NOTE
Under the law, the "author" of a

NAME OF AUTHOR ▼
Sam Rivers (member of the group "Limp Bizkit")

DATES OF BIRTH AND DEATH
Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by this author in which copyright is claimed. ▼
Music

NAME OF AUTHOR ▼
Wesley Borland (member of the group "Limp Bizkit")

DATES OF BIRTH AND DEATH
Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ USA
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by this author in which copyright is claimed. ▼
Music

09259235 • 09259235

**3**

**a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED
1996 ◀ Year
This information must be given in all cases.

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.
Month ▶ July Day ▶ 1 Year ▶ 1997
United States of America ◀ Nation

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼
Zomba Enterprises Inc., Fred Durst, Sam Rivers, Wesley Borland, and John Otto; All administered by and c/o Zomba Enterprises Inc.,
137-139 West 25th Street, New York, NY 10001

See instructions before completing this space.

TRANSFER If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼
By written agreement

DO NOT WRITE HERE / OFFICE USE ONLY
APPLICATION RECEIVED MAR 11 1998
ONE DEPOSIT RECEIVED MAR 11 1998
TWO DEPOSITS RECEIVED
REMITTANCE NUMBER AND DATE

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions. • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of 4 pages

6 3 1479250978 ON 11 71 33 92 71 66

EXHIBIT B

EXAMINED BY RG

FORM PA

CHECKED BY

☐ CORRESPONDENCE Yes

FOR COPYRIGHT OFFICE USE ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**5**

PREVIOUS REGISTRATION Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No If your answer is "Yes," why is another registration being sought? (Check appropriate box)

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼ Year of Registration ▼

**6**

DERIVATIVE WORK OR COMPILATION Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.

a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

See instructions before completing this space.

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**7**

DEPOSIT ACCOUNT If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼ Zomba Enterprises Inc.

Account Number ▼ DAO-35017

CORRESPONDENCE Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

Denise Levy
Zomba Enterprises Inc.
137-139 W.25th Street
New York, NY 10001

Area Code & Telephone Number ▶ (212) 824-1749

Be sure to give your daytime phone number.

**8**

CERTIFICATION* I, the undersigned, hereby certify that I am the
Check only one ▼

☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of Zomba Enterprises Inc.
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Denise Levy date ▶ 3-6-98

Handwritten signature (X) ▼ [signature]

**9**

MAIL CERTIFICATE TO

Name ▼ Denise Levy
c/o Zomba Music Publishing

Number/Street/Apartment Number ▼ 137-139 West 25th Street

City/State/ZIP ▼ New York, NY 10001

Certificate will be mailed in window envelope

• Complete all necessary spaces
• Sign your application in space 8
1. Application form
2. Nonrefundable $20 filing fee in check or money order payable to Register of Copyrights
3. Deposit material

Register of Copyrights
Library of Congress
Washington, D.C. 20559

The Copyright Office has the authority to adjust fees at 5-year intervals, based on changes in the Consumer Price Index. The next adjustment is due in 1996. Please contact the Copyright Office after July 1995 to determine the actual fee schedule.

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

This form was electronically produced by Elite Federal Forms, Inc.

(THU) 5. 27. 99 14:28/ST. 14:11/NO. 3760326741 P 10

FROM

# CONTINUATION SHEET FOR APPLICATION FORMS

FORM ____ /CON
UNITED STATES COPYRIGHT OFFICE

PA 886-036

- This Continuation Sheet is used in conjunction with Forms CA, PA, SE, SR, TX, and VA only. Indicate which basic form you are continuing in the space in the upper right-hand corner.
- If at all possible, try to fit the information called for into the spaces provided on the basic form.
- If you do not have space enough for all the information you need to give on the basic form, use this Continuation Sheet and submit it with the basic form.
- If you submit this Continuation Sheet, clip (do not tape or staple) it to the basic form and fold the two together before submitting them.
- Part A of this sheet is intended to identify the basic application. Part B is a continuation of Space 2 on the basic application. Part C (on the reverse side of this sheet) is for the continuation of Spaces 1, 4, or 6 on the basic application.

PA PAU SE SEG SEU SR SRU TX TXU VA VAU

EFFECTIVE DATE OF REGISTRATION

MAR 11 1998

(Month) (Day) (Year)

CONTINUATION SHEET RECEIVED

MAR 11 1998

Page 3 of 4 pages

DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY

**A** Identification of Application

IDENTIFICATION OF CONTINUATION SHEET: This sheet is a continuation of the application for copyright registration on the basic form submitted for the following work:

- TITLE: (Give the title as given under the heading "Title of this Work" in Space 1 of the basic form.)

Stinkfinger

- NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S): (Give the name and address of at least one copyright claimant as given in Space 4 of the basic form.)

Zomba Enterprises Inc., 137-139 West 25th Street, New York, NY 10001

**B** Continuation of Space 2

**d** NAME OF AUTHOR ▼ John Otto (member of the group "Limp Bizkit")

DATES OF BIRTH AND DEATH: Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☒ No

AUTHOR'S NATIONALITY OR DOMICILE (Name of Country): OR { Citizen of ▶ USA / Domiciled in ▶ }

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? ☐ Yes ☒ No; Pseudonymous? ☐ Yes ☒ No. If the answer to either of these questions is "Yes" see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by the author in which copyright is claimed. ▼

Music

**e** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH: Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☐ No

AUTHOR'S NATIONALITY OR DOMICILE (Name of Country): OR { Citizen of ▶ / Domiciled in ▶ }

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? ☐ Yes ☐ No; Pseudonymous? ☐ Yes ☐ No. If the answer to either of these questions is "Yes" see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by the author in which copyright is claimed. ▼

**f** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH: Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☐ No

AUTHOR'S NATIONALITY OR DOMICILE (Name of Country): OR { Citizen of ▶ / Domiciled in ▶ }

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? ☐ Yes ☐ No; Pseudonymous? ☐ Yes ☐ No. If the answer to either of these questions is "Yes" see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by the author in which copyright is claimed. ▼

*Use the reverse side of this sheet if you need more space for continuation of Spaces 1, 4, or 6 of the basic form.*

This form was electronically produced by Elite Federal Forms, Inc.

(THU) 5. 27' 99 14:29 ST. 14:11 NO. 3760326741 P 2

FROM



Copyright Office of the United States

THE LIBRARY OF CONGRESS

# Certificate of Recordation

THIS IS TO CERTIFY THAT THE ATTACHED DOCUMENT WAS RECORDED IN THE COPYRIGHT OFFICE ON THE DATE AND IN THE PLACE SHOWN BELOW.

THIS CERTIFICATE IS ISSUED UNDER THE SEAL OF THE COPYRIGHT OFFICE.

DATE OF RECORDATION

15Oct97

| VOLUME | PAGE |
| --- | --- |
| 3405 | 502 |

| VOLUME | PAGE |
| --- | --- |
| | |

OFFICIAL SEAL

Marybeth Peters

Register of Copyrights and Associate Librarian for Copyright Services

Exhibit C

# DOCUMENT COVER SHEET

For Recordation of Documents
UNITED STATES COPYRIGHT OFFICE

094649720

DATE OF RECORDATION (Assigned by Copyright Office)
OCT 15 1997
Month Day Year

Volume 3405 Page 502

Volume ____ Page ____

DO NOT WRITE ABOVE THIS LINE.

REMITTANCE ____

FUNDS RECEIVED ____

**To the Register of Copyrights:**
*Please record the accompanying original document or copy thereof.*

**1** NAME OF THE PARTY OR PARTIES TO THE DOCUMENT, AS THEY APPEAR IN THE DOCUMENT.

Party 1: Zomba Enterprises Inc. (assignor, grantor, etc.)
137-139 West 25th Street (address)
New York, New York 10001

Party 2: BMG Music (assignee, grantee, etc.)
1540 Broadway (address)
New York, New York 10036-4098

**2** DESCRIPTION OF THE DOCUMENT:
☐ Transfer of Copyright
☒ Security Interest
☐ Change of Name of Owner
☐ Termination of Transfer(s) (Section 304)
☐ Shareware
☐ Life, Identity, Death Statement (Section 302)
☐ Transfer of Mask Works
☐ Other ____

**3** TITLE(S) OF WORK(S), REGISTRATION NUMBER(S), AUTHOR(S), AND OTHER INFORMATION TO IDENTIFY WORK.
Title: Please see attached exhibit. Registration Number Author
Additional sheet(s) attached? ☒ yes ☐ no
If so, how many? 2

**4** ☒ Document is complete by its own terms
☐ Document is not complete. Record "as is"

**5** Number of titles in Document: 22

**6** Amount of fee enclosed or authorized to be charged to a Deposit Account $50.00

**7** Account number DAO-35017
Account name Zomba Enterprises Inc.

**8** Date of execution and/or effective date of accompanying document September 30, 1997
(month) (day) (year)

**9** AFFIRMATION:* I hereby affirm to the Copyright Office that the information given on this form is a true and correct representation of the accompanying document. This affirmation will not suffice as a certification of a photocopy signature on the document.

[signature]
October 14, 1997
Date

**10** CERTIFICATION:* Complete this certification if a photocopy of the original signed document is submitted in lieu of a document bearing the actual signature.
I certify under penalty of perjury under the laws of the United States of America that the accompanying document is a true copy of the original document.

N/A
Signature

Duly Authorized Agent of

Date

MAIL RECORDATION TO:
Name: Stephanie Denkowicz, Esq.
Walter, Conston, Alexander & Green, P.C.
Number/Street/Apartment Number: 90 Park Avenue
City/State/ZIP: New York, New York 10016

YOU MUST
• Complete all necessary spaces
• Sign your cover sheet in space 9

SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:
1. Two copies of the Document Cover Sheet
2. Fee in check or money order payable to Register of Copyrights
3. Document

MAIL TO:
Documents Unit Cataloging Division
Copyright Office, Library of Congress
Washington, D.C. 20559

The Copyright Office has the authority to adjust fees at 5-year intervals, based on changes in the Consumer Price Index. The next adjustment is due in 1996. Please contact the Copyright Office after July 1995 to determine the actual fee schedule.

*Knowingly and willfully falsifying material facts on this form may result in criminal liability. 18 U.S.C. §1001

(THU) 5. 27.'99 14:31/ST. 14:11/NO. 3760526742 P 13

# MORTGAGE OF COPYRIGHTS

**KNOW ALL MEN BY THESE PRESENTS**: That for good and valuable consideration, receipt whereof is hereby acknowledged:

1. The undersigned, **ZOMBA ENTERPRISES, INC.**, a New York Corporation (hereinafter referred to as "Mortgagor"), does hereby mortgage, grant, transfer, convey, license and assign for security to BMG Music, a New York general partnership (hereinafter referred to as "Mortgagee"), and its successors and assigns, a first and exclusive lien and security interest in and to all of Mortgagor's tangible and intangible assets of any kind or nature acquired for the period **August 1, 1997 through August 31 , 1997** (the "Date"; the "Collateral"), including without limitation, all or Mortgagor's interest in and to the following:

a) All compositions (including, without limitation, additions to the Bruton Music Catalog and the Chappell Recorded Music Library) the copyright and/or title of which has been acquired by Mortgagor since the Date or in which Mortgagor otherwise has acquired an exclusive interest since the Date; all contracts entered into since the Date to which Mortgagor is a party or a successor in interest relating to or affecting all such compositions; all accounts, contract rights, instruments, documents, chattel paper, and general intangibles thereunder or arising in connection therewith (including without limitation all copyrights, trademarks, service marks or interests therein owned by Mortgagor) or otherwise; all of Mortgagor's furniture, fixtures and equipment, work in progress, and inventory acquired since the Date; all products thereof, and additions and accessions thereto; and the proceeds from any or all of the foregoing; and

(b) Without limiting the foregoing, all of Mortgagor's right, title and interest in and to the compositions listed on Schedule A attached hereto and incorporated by reference herein.

2. Mortgagor and Mortgagee have entered into a Loan and Security Agreement (the "Agreement"), dated June 3, 1993 relating to the mortgage of, and security interest in the Collateral, and this Mortgage of Copyrights in expressly made subject to all of the terms and conditions and provisions contained in the Agreement. Terms not otherwise defined herein shall have the meanings given to them in the Agreement.

FROM (THU) 5. 27. 99 14:33/ST. 14:11/NO. 3760326741 P 15

3. To the extent of Mortgagor's copyright interest in or to any of the Collateral, Mortgagor hereby authorizes and empowers Mortgagee to file for copyright registration and renewal in Mortgagor's name or the name of the author or composer of the composition, and to exploit or refrain from exploiting (in the sole discretion of the Mortgagor or, in the event of Default, of the Mortgagee) any rights in any medium now or hereafter known anywhere in the world in or to the copyrighted work or any rights derived therefrom or subsidiary thereto.

4. Upon the occurrence and during the continuance of a Default under the Agreement or under this Mortgage of Copyrights, Mortgagee shall have all the rights and remedies granted under the Agreement and this Mortgage of Copyrights, and those allowed by law and those of a secured party under the New York Uniform Commercial Code or under the Uniform Commercial Code, as enacted in any jurisdiction in which the Collateral or any part thereof may be located. Without limiting the generality of the foregoing, in the event of any such Default, Mortgagee may immediately, without demand for performance, notice (except as set forth below) or other demand whatsoever to Mortgagor, all of which are hereby expressly waived to the extent permitted by law, sell at public or private sale or otherwise realize upon, at any location, the whole or from time to time any part of the Collateral or any interest which Mortgagor may have therein. After deducting all costs and expenses (including all reasonable expenses for brokers' fees and legal services) from the proceeds of sale or other disposition of the Collateral, Mortgagee shall apply the balance of such proceeds toward payment of any and all of Mortgagor's obligations hereunder or under the Agreement (collectively, the "Obligations"). Any remainder of the proceeds after payment in full of the Obligations shall be paid over to Mortgagor or other entitled party. Notice of any sale or other disposition of the Collateral or any part thereof shall be given to Mortgagor at least ten (10) Business Days prior to any intended public or private sale or other disposition of the Collateral, or any part thereof, and Mortgagor hereby agrees that such notice shall constitute reasonable notice of any sale or other disposition. At any such sale or other disposition, Mortgagee may, to the extent permissible under applicable law, purchase all or any part of the Collateral, free from any right of redemption on the part of Mortgagor, which right is hereby waived and released.

5. Mortgagor hereby authorizes and empowers Mortgagee, upon the occurrence and during the continuance of a Default under the Agreement or this Mortgage of Copyrights, to make, constitute and appoint any officer or agent of Mortgagee as Mortgagee may select, in its exclusive discretion, as Mortgagor's true and lawful attorney-in-fact, with the power: (a) to endorse Mortgagor's name on all applications, documents, papers and instruments necessary for Mortgagee to use the Collateral or any part thereof, (b) to grant or issue any exclusive or non-exclusive license under the Collateral to anyone else, and (c) to assign, pledge, convey or otherwise transfer title in, or dispose of the Collateral or any part thereof,

# Zomba Enterprises Inc. - New Titles
## August, 1997

| Title(s) | Writer(s) |
|---|---|
| 3 MCs | Kamaal Ibn John Fareed (p/k/a Q-tip)<br>Acklins Dillon<br>Harold Lee<br>Jamahl Hanna |
| Gravity | Ali Shaheed Muhammad<br>Acklins Dillon<br>Harold Lee<br>Jamahl Hanna |
| All The Way Live | Kamaal Ibn John Fareed (p/k/a Q-Tip)<br>R. McBride<br>E. Brooks<br>J. Robinson<br>R Smith |
| Escobar '97 | Nasir Jones (p/k/a NAS) |
| Crimino | Chris Duarte<br>John Jordan |
| Tailspin Headwhack | Chris Duarte<br>John Jordan |
| .32 Blues | Chris Duarte<br>John Jordan |
| Walls | Chris Duarte<br>John Jordan |
| Cleopatra | Chris Duarte<br>Junior Medlow Williams |
| Catch The Next Line | Chris Duarte<br>John Jordan |
| Intro | Fred Durst<br>Sam Rivers<br>Wesley Borland<br>John Otto |
| Pollution | Fred Durst<br>Sam Rivers<br>Wesley Borland<br>John Otto |
| Counterfeit | Fred Durst<br>Sam Rivers<br>Wesley Borland<br>John Otto |
| Stuck | Fred Durst<br>Sam Rivers<br>Wesley Borland<br>John Otto |

COPYRIGHT OFFICE

# ımba Enterprises Inc. - New Titles
## ʌugust, 1997

| Title(s) | Writer(s) |
|---|---|
| Nobody Loves Me | Fred Durst<br>Sam Rivers<br>Wesley Borland<br>John Otto |
| Sour | Fred Durst<br>Sam Rivers<br>Wesley Borland<br>John Otto |
| Stalemate | Fred Durst<br>Sam Rivers<br>Wesley Borland<br>John Otto |
| Clunk | Fred Durst<br>Sam Rivers<br>Wesley Borland<br>John Otto |
| Stinkfinger | Fred Durst<br>Sam Rivers<br>Wesley Borland<br>John Otto |
| Indigo Flow | Fred Durst<br>Sam Rivers<br>Wesley Borland<br>John Otto |
| Leech | Fred Durst<br>Sam Rivers<br>Wesley Borland<br>John Otto |
| Everything | Fred Durst<br>Sam Rivers<br>Wesley Borland<br>John Otto |

IN WITNESS WHEREOF, the undersigned has executed this Mortgage of Copyrights this ______ day of ___________, 199_.

ZOMBA ENTERPRISES, INC.
a New York corporation

By:_____________________________

Its:_____________________________

STATE OF NEW YORK }
} ss.:
COUNTY OF NEW YORK }

On September 30, 1997, before me personally appeared Parrol Katz, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument as the Sr VP Business Affairs of Zomba Enterprises, Inc.

Witness my hand and official seal.

Notary Public

(S E A L)

LORI LANDEW
Notary Public, State of New York
No. 6003896
Qualified in New York County
Commission Expires 11/23/98



UNITED STATES COPYRIGHT OFFICE • THE LIBRARY OF CONGRESS

# receipt

LIBRARY OF CONGRESS
COPYRIGHT OFFICE
101 INDEPENDENCE AVENUE, S.E.
WASHINGTON, D.C. 20559-6000

no. 136867

date 7/14/99

**received**

- [ ] not examined in Information Section
- form(s) 2 PA, 1 SR, 1 SR/CON
- number of copies 3 cassette tape
- type of deposit copies
- document(s)
- correspondence
- cover letter /
- refer to

**services**

- [ ] search
- [ ] photocopies
- [ ] add'l certificates
- [ ] certifications
- [ ] transfer to photoduplication
- [ ] other

**method of payment**

amount
- [ ] deposit account under
- [ ] cash
- [x] check $90.00
- [ ] no fee
- [ ] for connection

received from Carolyn Herman
phone

address 1831 N. 3rd St.
Jacksonville Beach, Fl 32250

representing
phone

REGISTER OF COPYRIGHTS by Althea

**title** Stink finger

. . . and 2 others

This receipt is intended to show that the material described was received in the Copyright Office on the date given. When multiple claims are submitted by or on behalf of the same remitter, however, only one receipt listing only one title on the receipt will be provided.

Receipt of material is merely a preliminary step in the registration and/or recordation process. It does not imply that any final determination has been made in the case, or that the material is acceptable for registration.

Official action on an application for copyright registration or a document for recordation can be taken only after there has been a full examination of the claim following regular Copyright Office procedures. We are glad to discuss questions involving copyright registration on the telephone or in person-to-person conversations. However, all statements made during these exploratory discussions must be considered provisional, and are not binding either upon the applicant or upon the Office.

**notes:**

Exhibit D-1A

Thomson & Thomson®
World Leader In Trademark & Copyright Services™

ANTWERP • BOSTON • CHICAGO • DALLAS • LONDON • LOS ANGELES • MILAN • MONTREAL • NEW YORK • PARIS • SAN FRANCISCO • TOKYO • TORONTO • WASHINGTON, D.C.

07/14/99

Copyright Office
Library of Congress
Washington, DC 20559

Re: STINKFINGER and 3 others

Gentlemen:

I am enclosing for registration in the Copyright Office the following:

1. One (1) Form PA, dated July 9, 1999, cassette copy of deposit for the music entitled **STINKFINGER.**

2. One (1) Form PA, dated July 9, 1999, cassette copy of deposit for the music entitled **STUCK.**

3. One (1) Form SR, dated July 13, 1999, Form SR Continuation Sheet, cassette copy of deposit for the music, performance and sound recording entitled **LIMP BIZKIT ORIGINAL DEMO.**

**Any questions concerning the material submitted should be directed to the party named in Space 7 of the application.**

Please deduct all processing fees from the attached Carolyn Herman check number 1036.

When processing has been completed, please forward the Certificate as indicated on the registration or document cover sheet.

Thank you in advance for your assistance.

Sincerely yours,

Christine E. Wilson
**Direct In Dial - 202-721-6405**

CEW/
Enclosure

RECEIVED
JUL 14 1999
COPYRIGHT OFFICE
PUBLIC OFFICE

Exhibit D-1B

1750 K Street NW, Suite 200 • Washington, DC 20006-2305 • 202-835-0240 • Fax 202-728-0744 • www.thomson-thomson.com

# FORM PA

For a Work of the Performing Arts
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

PA PAU

EFFECTIVE DATE OF REGISTRATION

Month Day Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1** TITLE OF THIS WORK ▼

Stinkfinger

PREVIOUS OR ALTERNATIVE TITLES ▼

NATURE OF THIS WORK ▼ See instructions

Music

**2** **a** NAME OF AUTHOR ▼

Robert Waters

DATES OF BIRTH AND DEATH
Year Born ▼ 1968 Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ USA
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
Music

NOTE
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b** NAME OF AUTHOR ▼

Sam Rivers

DATES OF BIRTH AND DEATH
Year Born ▼ 1977 Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ USA
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼
Music

**c** NAME OF AUTHOR ▼

John Otto

DATES OF BIRTH AND DEATH
Year Born ▼ 1978 Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ USA
Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
Music

**3** **a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED
1996 ◀ Year
This information must be given in all cases.

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.
Month ▶ Day ▶ Year ▶
◀ Nation

**4** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Robert Waters, 8157 Cecil St., Jacksonville, FL
Sam Rivers, c/o David Muntel, Esq. 7 W. 22nd St, N.Y., NY 10010
John Otto, c/o David Muntel, Esq. 7 W. 22nd St. N.Y., NY 10010

See instructions before completing this space

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

DO NOT WRITE HERE
OFFICE USE ONLY
APPLICATION RECEIVED
ONE DEPOSIT RECEIVED
TWO DEPOSITS RECEIVED
FUNDS RECEIVED

EXHIBIT D-2

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page
• See detailed instructions • Sign the form at line 8

DO NOT WRITE HERE

EXAMINED BY

FORM

CHECKED BY

CORRESPONDENCE
Yes

FOR COPYRIGHT OFFICE USE ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**5**

PREVIOUS REGISTRATION Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

X Yes [ ] No If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼ D. Previously registered work is derivative work of subject application and not identified as such on its application.

a. [ ] This is the first published edition of a work previously registered in unpublished form.

b. X This is the first application submitted by this author as copyright claimant.

c. [ ] This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼ PA 886-036 Year of Registration ▼ 1998

**6**

DERIVATIVE WORK OR COMPILATION Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

See instructions before completing this space

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**7**

DEPOSIT ACCOUNT If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼ Account Number ▼

CORRESPONDENCE Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

Carolyn Herman, Esq.
1831 N. Third Street
Jacksonville Beach, FL 32250

Area Code and Telephone Number ▶

Be sure to give your daytime phone ◀ number

**8**

CERTIFICATION* I, the undersigned, hereby certify that I am the

Check only one ▼

X author

[ ] other copyright claimant

[ ] owner of exclusive right(s)

[ ] authorized agent of

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Robert Waters date ▶ 7/9/99

Handwritten signature (X) ▼ Robert Waters

**9**

MAIL CERTIFICATE TO

Name ▼
Carolyn Herman, Esq.

Number/Street/Apartment Number ▼
1831 N. Third Street

City/State/ZIP ▼
Jacksonville Beach, FL 32250

Certificate will be mailed in window envelope

YOU MUST:
- Complete all necessary spaces
- Sign your application in space 8

SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable $20 filing fee in check or money order payable to *Register of Copyrights*
3. Deposit material

MAIL TO:
Register of Copyrights
Library of Congress
Washington, D.C. 20559-6000

The Copyright Office has the authority to adjust fees at 5-year intervals, based on changes in the Consumer Price Index. The next adjustment is due in 1996. Please contact the Copyright Office after July 1995 to determine the actual fee schedule.

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

# FORM PA

For a Work of the Performing Arts
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

PA PAU

EFFECTIVE DATE OF REGISTRATION

Month Day Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

## 1

TITLE OF THIS WORK ▼

Stinkfinger

PREVIOUS OR ALTERNATIVE TITLES ▼

NATURE OF THIS WORK ▼ See instructions

Music

## 2

**a** NAME OF AUTHOR ▼ Robert Waters

DATES OF BIRTH AND DEATH Year Born ▼ 1968 Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☒ No

AUTHOR'S NATIONALITY OR DOMICILE Name of Country OR { Citizen of ▶ USA / Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK Anonymous? ☐ Yes ☒ No Pseudonymous? ☐ Yes ☒ No — If the answer to either of these questions is "Yes," see detailed instructions

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼ Music

**b** NAME OF AUTHOR ▼ Sam Rivers

DATES OF BIRTH AND DEATH Year Born ▼ 1977 Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☒ No

AUTHOR'S NATIONALITY OR DOMICILE Name of Country OR { Citizen of ▶ USA / Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK Anonymous? ☐ Yes ☒ No Pseudonymous? ☐ Yes ☒ No — If the answer to either of these questions is "Yes," see detailed instructions

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼ Music

**c** NAME OF AUTHOR ▼ John Otto

DATES OF BIRTH AND DEATH Year Born ▼ 1978 Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☒ No

AUTHOR'S NATIONALITY OR DOMICILE Name of Country OR { Citizen of ▶ USA / Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK Anonymous? ☐ Yes ☒ No Pseudonymous? ☐ Yes ☒ No — If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼ Music

NOTE

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

## 3

**a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED — This information must be given in all cases. 1996 ◀ Year

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK — Complete this information ONLY if this work has been published. Month ▶ Day ▶ Year ▶ ◀ Nation

## 4

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Robert Waters, 8157 Cecil St., Jacksonville, FL
Sam Rivers, c/o David Mantel, Esq 7 W. 22nd St, NY, NY 10010
John Otto, c/o David Mantel, Esq. 7 W. 22nd St., NY, NY 10010

See instructions before completing this space

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

DO NOT WRITE HERE — OFFICE USE ONLY: APPLICATION RECEIVED / ONE DEPOSIT RECEIVED / TWO DEPOSITS RECEIVED / FUNDS RECEIVED

EXHIBIT D-2

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page • See detailed instructions • Sign the form at line 8

DO NOT WRITE HERE

# FORM PA

For a Work of the Performing Arts
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

PA PAU

EFFECTIVE DATE OF REGISTRATION

Month Day Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1**

TITLE OF THIS WORK ▼

Stuck

PREVIOUS OR ALTERNATIVE TITLES ▼

NATURE OF THIS WORK ▼ See instructions

Music

**2**

a NAME OF AUTHOR ▼ Robert Waters

DATES OF BIRTH AND DEATH Year Born ▼ 1968 Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☒ No

AUTHOR'S NATIONALITY OR DOMICILE Name of Country OR { Citizen of ▶ USA / Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK Anonymous? ☐ Yes ☒ No Pseudonymous? ☐ Yes ☒ No — If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼ Music

NOTE

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

b NAME OF AUTHOR ▼ Sam Rivers

DATES OF BIRTH AND DEATH Year Born ▼ 1977 Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☒ No

AUTHOR'S NATIONALITY OR DOMICILE Name of Country OR { Citizen of ▶ USA / Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK Anonymous? ☐ Yes ☒ No Pseudonymous? ☐ Yes ☒ No — If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed ▼ Music

c NAME OF AUTHOR ▼ John Otto

DATES OF BIRTH AND DEATH Year Born ▼ 1978 Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☒ No

AUTHOR'S NATIONALITY OR DOMICILE Name of Country OR { Citizen of ▶ USA / Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK Anonymous? ☐ Yes ☒ No Pseudonymous? ☐ Yes ☒ No — If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼ Music

**3**

a YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED 1996 ◀ Year — This information must be given in all cases.

b DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK — Complete this information ONLY if this work has been published. Month ▶ Day ▶ Year ▶ ◀ Nation

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Robert Waters, 8157 Cecil St., Jacksonville, FL
Sam Rivers, c/o David Munkel, Esq., 7 W. 22nd St, NY, NY 10010
John Otto, c/o David Munkel, Esq., 7 W. 22nd St, NY, NY 10010

See instructions before completing this space.

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

DO NOT WRITE HERE — OFFICE USE ONLY: APPLICATION RECEIVED / ONE DEPOSIT RECEIVED / TWO DEPOSITS RECEIVED / FUNDS RECEIVED

EXHIBIT D-3

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.

EXAMINED BY

FORM PA

CHECKED BY

CORRESPONDENCE
Yes

FOR COPYRIGHT OFFICE USE ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**5**

PREVIOUS REGISTRATION Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

X Yes [ ] No If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼ D. Previously registered work is derivative work of subject application and not identified as such on its application.

a. [ ] This is the first published edition of a work previously registered in unpublished form.

b. [X] This is the first application submitted by this author as copyright claimant.

c. [ ] This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼ PA 886-031 Year of Registration ▼ 1998

**6**

DERIVATIVE WORK OR COMPILATION Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

See instructions before completing this space

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**7**

DEPOSIT ACCOUNT If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼ Account Number ▼

CORRESPONDENCE Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

Carolyn Herman, Esq.
1831 N. Third Street
Jacksonville Beach, FL 32250

Area Code and Telephone Number ▶

Be sure to give your daytime phone ◀ number

**8**

CERTIFICATION* I, the undersigned, hereby certify that I am the

Check only one ▼

[X] author

[ ] other copyright claimant

[ ] owner of exclusive right(s)

[ ] authorized agent of ______________________

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Robert Waters date ▶ 7/9/99

Handwritten signature (X) ▼ Robert Waters

**9**

MAIL CERTIFICATE TO

Name ▼
Carolyn Herman, Esq.

Number/Street/Apartment Number ▼
1831 N. Third Street

City/State/ZIP ▼
Jacksonville Beach, FL 32250

Certificate will be mailed in window envelope

YOU MUST:
- Complete all necessary spaces
- Sign your application in space 8

SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable $20 filing fee in check or money order payable to *Register of Copyrights*
3. Deposit material

MAIL TO:
Register of Copyrights
Library of Congress
Washington, D.C. 20559-6000

The Copyright Office has the authority to adjust fees at 5-year intervals, based on changes in the Consumer Price Index. The next adjustment is due in 1996. Please contact the Copyright Office after July 1995 to determine the actual fee schedule.

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.





MOJO

June 3, 1996

Fred Durst
Sam Rivers
John Otto
Rob Waters
Terry Balsamo
p/k/a "Limp Bizkit"
c/o David Mantel, Esq.
Katz, Smith & Cohen
Ivy Place
3423 Piedmont Road
Atlanta, Georgia 30305

Re: Mojo Records and Limp Bizkit Exclusive Recording Agreement

Dear Limp Bizkit:

The following, when signed by Mojo Records, LLC. ("Mojo") and by you ("Limp Bizkit"), will constitute the basic terms and conditions of the Exclusive Recording Agreement between Mojo and Limp Bizkit.

TERM — Initial Period plus seven (7) options

TERRITORY — The entire world and universe

DELIVERY/ RECORDING OBLIGATION

Delivery: One (1) LP per contract period

Recording: If Mojo shall elect not to record the Second LP, Mojo shall simultaneously with notice of such election pay to you an amount equal to Thirty Five Thousand ($35,000) Dollars

RECORDING FUND

| | Minimum | Maximum |
|---|---|---|
| First EP: | $ 15,000 | |
| First LP: | $150,000 | |
| Second LP: | $150,000 | $300,000 |
| Third LP: | $175,000 | $300,000 |
| Fourth LP: | $175,000 | $350,000 |
| Fifth LP: | $225,000 | $350,000 |
| Sixth LP: | $225,000 | $375,000 |
| Seventh LP: | $250,000 | $375,000 |
| Eighth LP: | $250,000 | $400,000 |

Each Recording Fund will be equal to two thirds (2/3) of the lesser of (i) the average royalties earned by Limp Bizkit on United States Normal Retail Channels Net Sales (as reported by SoundScan) of the last two (2) LP's

1749 14th Street, Suite 201
Santa Monica, CA 90404

Tel 310 260-3181
Fax 310 314-3699

EXHIBIT E

delivered by Limp Bizkit or (ii) the royalties earned by Limp Bizkit on United States Normal Retail Channels Net Sales (as reported by SoundScan) of the immediately preceding LP delivered by Limp Bizkit computed as of the date twelve (12) months after the initial United States release date of the applicable LP. Notwithstanding anything to the contrary, the applicable Recording Fund will not be less than the applicable Minimum or greater than the applicable Maximum provided above.

Thirty (30%) percent of the First LP Recording Fund shall be paid to Limp Bizkit on full execution of the Exclusive Recording Agreement. Twenty-five (25%) percent of all subsequent LP Recording Funds shall be paid to Limp Bizkit on commencement of the recording sessions for such LP.

ARTIST ADVANCES

All moneys paid to or on behalf of Limp Bizkit other than royalties, including that amount by which the Recording Fund exceeds the actual Recording Costs for the LP concerned, shall be considered advances.

ROYALTIES

LPs: 15% (all-in) SRLP
Singles: 11% (all-in) SRLP

Escalations

LPs: 15 1/2% (all-in) SRLP on Net Sales of any one LP sold through Normal Retail Channels in the United States in excess of 500,000 units.

16% (all-in) SRLP on Net Sales of any one LP sold through Normal Retail Channels in the United States in excess of 1,000,000 units.

Singles: 12% (all-in) SRLP on Net Sales of any one Single sold through Normal Retail Channels in the United States in excess of 500,000 units.

Calculations

Foreign: Canada: 85% US rate
Other: 66 2/3% US rate

Standard adjustments for Midline, Armed Forces, Budget, Direct Mail, Club, non Normal Retail etc.

Container Charges

| | |
|---|---|
| Analog Disc: | 15% SRLP |
| Analog Cassette: | 20% SRLP |
| Compact Discs and other: | 25% SRLP |

VIDEOS

Mojo agrees to produce one (1) MTV-style Video in connection with the commercial release of each LP provided that Mojo releases a Single from such LP. Each Video's producer, director, concept and script shall be mutually approved by Limp Bizkit and Mojo. 50% of all Video costs will be recoupable from audio record royalties and the remaining costs will be recoupable from Video income. Notwithstanding anything to the contrary, all Video costs in excess of $75,000 are 100% recoupable from audio record royalties. Limp Bizkit shall have a right of approval of all Video production budgets in excess of $75,000.

RELEASE COMMITMENTS

Mojo will release each LP delivered hereunder within four (4) months of delivery. If Mojo fails to do so, Limp Bizkit may notify Mojo that Limp Bizkit intends to terminate the term of this agreement unless Mojo releases the LP within two (2) months after Mojo's receipt of Limp Bizkit's notice. If Mojo fails to so release, Limp Bizkit may terminate the term of this agreement.

INDEPENDENT PROMOTION

All costs paid by Mojo to third parties in connection with independent marketing and/or independent promotion of records are 50% recoupable.

MUSICAL COMPOSITIONS

| | |
|---|---|
| LP: | Eleven (11) times 75% of statutory rate |
| Single: | Two (2) times 75% of statutory rate |
| EP: | Five (5) times 75% of statutory rate |

Escalations

For Net US Sales in excess of 500,000 units: 85%
For Net US Sales in excess of 1,000,000 units: 90%

No mechanical royalties will be payable with respect to Records which are otherwise non-royalty bearing, non-musical material and with respect to compositions of less than one (1) minute in duration.

CREATIVE CONTROLS

Artwork, material selection, studio selection, producer selection, single selection, and all other creative decisions shall be mutually approved by Limp Bizkit and Mojo.

Only packaging/artwork costs in excess of Mojo's then standard design, engraving or manufacturing costs shall be recoupable.

TOUR SUPPORT

Mojo shall consider any requests by Limp Bizkit for tour support and Mojo shall use its reasonable endeavors, consistent with its good faith creative and commercial judgment, to act upon such requests. 100% of all moneys paid by Mojo or its licensees for tour support shall be charged against and recouped from royalties due Limp Bizkut.

EQUIPMENT BUDGET

Mojo shall consider any requests by Limp Bizkit for an equipment budget and Mojo shall use its reasonable endeavors, consistent with its good faith creative and commercial judgment, to act upon such requests. 100% of all moneys paid by Mojo or its licensees for an equipment budget shall be charged against and recouped from royalties due Limp Bizkit.

The parties agree in good faith to execute a more formal agreement containing the provisions hereof and such other provisions which shall not be inconsistent with the those contained herein. Until the execution of a more formal agreement, this shall be the Agreement.

Sincerely yours,

Mojo Records, LLC.

An Authorized Signatory

Accepted and Agreed to:

Rob Waters

Terry Balsamo

Fred Durst

Sam Rivers

John Otto



**Mojo Records, LLC.**
**1749 Fourteenth Street**
**Suite 201**
**Santa Monica, California 90404**
**tel:(310) 260-3181**
**fax:(310) 314-3699**

July 19, 1996

Fred Durst
Sam Rivers
John Otto
Rob Waters
Terry Balsamo
p/k/a "Limp Bizkit"
c/o David Mantel, Esq.
Katz, Smith & Cohen
Ivy Place
3423 Piedmont Road
Atlanta, Georgia 30305

Gentlemen:

The following, when signed by you and by us, will constitute the agreement between you and us:

1. The term of the agreement between Fred Durst, Sam Rivers, John Otto, Rob Waters and Terry Balsamo professionally known as "Limp Bizkit" and Mojo Records, LLC. dated June 3, 1996 with reference to your exclusive recording services (hereinafter referred to as the "Agreement") is hereby terminated as of the date hereof, provided that within five (5) business days of the date hereof, you shall deliver to us:

(i) Two (2) original copies of this agreement duly signed by each of you; and

(ii) The sum of One Hundred Thousand Six Hundred Forty Eight Dollars and Fifty Cents ($100,648.50) ("Termination Payment").

2. You and we hereby forever release and discharge the other from any and all claims, demands, actions, causes of action, suits, sums of money, accounts, covenants, agreements, contracts, and promises in law or equity, which either party has, has had, or at any time may have, against the other, its successors and assigns, whether or not they have been subject to dispute or otherwise and whether known or unknown to the other party, by reason of any matter, cause, or thing whatsoever from the beginning of the world to the date hereof, relating to or connected with the Agreement, including, without limitation, any and all obligations to make or release any recordings or to make any payments under the Agreement.

3. Nothing contained in this agreement shall affect those obligations that survive the termination or expiration of the Term of the Agreement (e.g. warranties).

4. Notwithstanding the Agreement, we hereby assign to you, on a quit claim basis, all of our right and title in and to master recordings made by you pursuant to the Agreement. You shall not identify such master recordings as being connected with or recorded for us and you shall indemnify and hold us (our successors and assigns) harmless from any and all claims, causes of actions, suits, etc. arising from or connected with the exploitation or other use of said master recordings. We hereby waive any re-recording restrictions applicable to the compositions embodied on said master recordings pursuant to the Agreement.

EXHIBIT F

5. It is understood and agreed that time is of the essence with respect to your delivery of the executed copies of this agreement and the Termination Payment. You understand and agree that this agreement shall not be deemed complete, effective or otherwise enforceable until such delivery has been made in such manner and form as is required by us.

6. (a) This agreement has been entered into in the State of California, and the validity, interpretation and legal effect of this Agreement shall be governed by the laws of the State of California, applicable to contracts entered into and performed entirely within the State of California, with respect to the determination of any claim, dispute or disagreement which may arise out of the interpretation, performance, or breach of this agreement. The California courts (state and federal) only will have jurisdiction over any controversies regarding this agreement, and the parties hereto consent to the jurisdiction of said courts.

(b) You acknowledge that you intend this agreement as a full and final accord and satisfaction and release of every matter referred to in paragraph 2 hereof, and that you are familiar with Section 1542 of the Civil Code of California, which provides:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

You waive and relinquish any right and benefit which you may have under Section 1542 to the extent that you may lawfully do so in connection with the subject matter hereof.

7. You warrant that you have the right and power to enter into and fully perform pursuant to the terms of this agreement.

Very truly yours,

Mojo Records, LLC.

By:

ACCEPTED AND AGREED TO:

Fred Durst

Rob Waters

Sam Rivers

Terry Balsamo

John Otto





August 6, 1996

Mr. Rob Waters
3698 Northride
Jacksonville, FL 32223

Dear Rob,

As you are already aware through your conversations with Patrick McDowell, Mojo Records has terminated its agreement with Limp Bizkit. Enclosed is an original copy of the termination document that requires your signature.

Please sign this document as quickly as possible and return it, via Federal Express, using the enclosed airbill.

Thank you in advance for your cooperation.

Best regards,

Karyn Cooks
for Jay Rifkin

/kc

enc.

1744 19th Street, Suite 201
Santa Monica CA 90404

Tel 310 260-3181
Fax 310 314 3699
Email info@mojorecords.com

EXHIBIT G

H

R E C O R D S

Mojo Records, LLC.
1749 Fourteenth Street
Suite 201
Santa Monica, California 90404
tel:(310) 260-3181
fax:(310) 314-3699

August 2, 1996

Fred Durst
Sam Rivers
John Otto
Rob Waters
Terry Balsamo
p/k/a "Limp Bizkit"
c/o David Mantel, Esq.
Katz, Smith & Cohen
Ivy Place
3423 Piedmont Road
Atlanta, Georgia 30305

Gentlemen:

The following, when signed by you and by us, will constitute the agreement between you and us:

1. The term of the agreement between Fred Durst, Sam Rivers, John Otto, Rob Waters and Terry Balsamo professionally known as "Limp Bizkit" (hereinafter collectively and individually referred to as "You") and Mojo Records, LLC. dated June 3, 1996 with reference to your exclusive recording services (hereinafter referred to as the "Agreement") is hereby terminated as of the date hereof, provided that within three (3) business days of the date hereof, you shall deliver to us:

(i) Two (2) original copies of this agreement duly signed by each of You; and

(ii) The sum of One Hundred Thousand Six Hundred Forty Eight Dollars and Fifty Cents ($100,648.50) ("Termination Payment").

2. You and we hereby forever release and discharge the other from any and all claims, demands, actions, causes of action, suits, sums of money, accounts, covenants, agreements, contracts, and promises in law or equity, which either party has, has had, or at any time may have, against the other, its successors and assigns, whether or not they have been subject to dispute or otherwise and whether known or unknown to the other party, by reason of any matter, cause, or thing whatsoever from the beginning of the world to the date hereof, relating to or connected with the Agreement, including, without limitation, any and all obligations to make or release any recordings or to make any payments under the Agreement.

3. Nothing contained in this agreement shall affect those obligations that survive the termination or expiration of the Term of the Agreement (e.g. warranties).

4. Notwithstanding the Agreement, we hereby assign to You, on a quit claim basis, all of our right and title in and to master recordings made by You pursuant to the Agreement. You shall not identify such master recordings as being connected with or recorded for us and You shall indemnify and hold us (its successors and assigns) harmless from any and all liability, loss, damage, cost and expense (including legal expenses and attorney fees) arising from or connected with the exploitation or other use of said master recordings. We hereby waive any re-recording restrictions applicable to the compositions embodied on said master recordings pursuant to the Agreement.

EXHIBIT H



Limp Bizkit
August 2, 1996
Page 2


5.    It is understood and agreed that time is of the essence with respect to your delivery of the executed copies of this agreement and the Termination Payment. You understand and agree that this agreement shall not be deemed complete, effective or otherwise enforceable until this agreement has been duly executed by all signatories listed below, and delivery has been made in such manner and form as is required by us.

6.    Notwithstanding anything herein to the contrary, the parties acknowledge and agree that in the event that any of the signatories listed below fails to execute this agreement, this agreement will be deemed complete, effective and otherwise enforceable when partially executed copies of this agreement and the Termination Payment are accepted by Mojo in writing.  In such an event, those signatories who have executed this agreement at the time of Mojo's acceptance agree to and do hereby indemnify, save and hold Mojo (its successors and assigns) and its licensees, harmless from any and all liability, loss, damage, cost and expense (including legal expenses and attorney fees) arising out of or connected with the Agreement or any claim, breach or alleged breach of the Agreement.

7.    (a)    This agreement has been entered into in the State of California, and the validity, interpretation and legal effect of this Agreement shall be governed by the laws of the State of California, applicable to contracts entered into and performed entirely within the State of California, with respect to the determination of any claim, dispute or disagreement which may arise out of the interpretation, performance, or breach of this agreement. The California courts (state and federal) only will have jurisdiction over any controversies regarding this agreement, and the parties hereto consent to the jurisdiction of said courts.

      (b)    You acknowledge that You intend this agreement as a full and final accord and satisfaction and release of every matter referred to in paragraph 2 hereof, and that You are familiar with Section 1542 of the Civil Code of California, which provides:

      "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

            You waive and relinquish any right and benefit which you may have under Section 1542 to the extent that you may lawfully do so in connection with the subject matter hereof.

8.    You warrant that you have the right and power to enter into and fully perform pursuant to the terms of this agreement.


1749 14th Street, Suite 201
Santa Monica, CA 90404

Tel 310 260-3181
Fax 310 314-3699
Email info@mojorecords.com

R E C O R D S

9. You agree to and do hereby indemnify, save and hold Mojo (our successors and assigns) and its licensees harmless from any and all liability, loss, damage, cost and expense (including legal expenses and attorney fees) arising out of or connected with any breach or alleged breach of this agreement or any claim that is inconsistent with any of the warranties or representations made by You in this agreement. You agree to pay Mojo promptly for any amount for which You may be responsible with respect to the foregoing sentence. In the event Mojo decides at its sole discretion to pay any such costs which You may be responsible, You agree to reimburse Mojo on demand for any payment made or incurred by Mojo.

10. For the convenience of the parties, this agreement may be executed in counterparts, each executed agreement shall be deemed to be an original, but all of the executed agreements shall constitute one and the same agreement.

Very truly yours,

Mojo Records, LLC.

By: ______________________

ACCEPTED AND AGREED TO:

______________________
Fred Durst

______________________
Rob Waters

______________________
Sam Rivers

______________________
Terry Balsamo

______________________
John Otto

1749 14th Street, Suite 201
Santa Monica, CA 90404

Tel 310 260-3181
Fax 310 314-3699
Email info@mojorecords.com

ROBYN KLEIN, ESQ.
Le Domaine
403 East 62nd Street
New York, New York 10021
Tel: (212) 832-1479
Fax: (212) 832-1384

August 23, 1996

VIA FEDERAL EXPRESS AND FACSIMILE MAIL
David Mantel, Esq.
Katz, Smith & Cohen
Ivy Place
3423 Piedmont Road
Atlanta, Georgia 30305

Re: Mojo Records, LLC. -w- Limp Bizkit: Termination and Release Agreement

Dear David:

Despite all of our good faith efforts, we have failed to resolve the issues between our clients in a timely fashion.

I have therefore been instructed by my client, Mojo Records, LLC., to formally withdraw the July 19, 1996 offer to terminate, and release your clients from, the Exclusive Recording Agreement between Mojo Records and Fred Durst, Sam Rivers, John Otto, Rob Waters and Terry Balsamo, collectively and individually, professionally known as "Limp Bizkit".

As you know, until such time as a formal termination and release agreement is signed by all parties, your clients are bound by the terms and conditions of their June 3, 1996 Exclusive Recording Agreement with Mojo Records.

Please accept this correspondence as a formal request for you to:

(i) Return immediately the original, partially executed copy of the (now long expired) Termination and Release Agreement in the enclosed Federal Express envelope; and

(ii) Contact me to discuss your clients' duties, obligations and liabilities, including but not limited to, the obligation to furnish to Mojo Records their exclusive recording services.

Nothing contained in this letter is intended to be nor should be construed as a waiver of any of Mojo Record's rights and remedies all of which are specifically reserved.

Very truly yours,

Robyn.

cc: Jay Rifkin
Melvyn R. Lewinter
John Duvall, Esq.
Flip Records

EXHIBIT H